**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In Re:<br>Daniel Corey Berry &<br>Jennifer Marie-Anne Berry<br>   Debtors<br>----------------------------------------------<br>Daniel Corey Berry &<br>Jennifer Marie-Anne Berry<br>   Movants<br><br>vs.<br><br>Lakeview Loan Servicing. LLC<br>   Respondent | Chapter 13<br><br>Case No. 18-13313<br><br>Related to Document No. 15<br><br>Hearing Date and Time: July 19, 2018<br>at 9:30 AM<br><br>Response due: July 11, 2018 |

**<u>RESPONSE OF LAKEVIEW LOAN SERVICING, LLC TO DEBTOR'S MOTION TO
DETERMINE THE VALUE OF SECURITY AND CREDITOR'S SECURED STATUS</u>**

AND NOW, comes the Respondent, Lakeview Loan Servicing, (hereinafter, "Respondent"),

through its Counsel, Stern & Eisenberg PC, and respectfully requests the Court Deny the Debtor's

Motion to Determine the Value of Security and Creditor's Secured Status and in response thereto avers

as follows:

1. Admitted.

2. Denied as a conclusion of law. By way of further response, to the extent this averment
   contains a quoted portion of the statute, the quotation appears to be accurate.

3. Admitted.

4. Admitted.

5. Denied as a conclusion of law. By way of further response, this matter is governed by the
   terms of the contract between the Debtors and Respondent. The contract, a Mortgage given
   by Daniel C. Berry to Respondent's predecessor-in-interest, which Mortgage encumbers the
   Debtors' real property located at 523 S. Lehigh Gap Street, Walnutport, PA 18088 (the
   "Property"), states as follows:

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

*See* Claim 3, at Page 23 (Mortgage, Section 9).

As described in Section 9, the bankruptcy case "is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument," and therefore:

Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including, but are not limited to paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.

*See* Claim 3, at Page 23 (Mortgage, Section 9).

In other words, the charges listed in the objected-to Notice of Postpetition Fees, Expenses, and Charges result from the Debtors' initiation of a bankruptcy proceeding. The bankruptcy proceeding created the need for Respondent, a secured lender of the Debtors, to perform certain activities in conjunction with the ongoing proceedings, including the filing of a secured proof of claim ahead of the mandated claims bar date as well as to review the Debtors' proposed treatment of Respondent's secured claim in the Chapter 13 Plan. Both of these activities are reasonable and appropriate activities to protect Respondent's secured interest in the Property, and, under the terms of the Mortgage, Respondent may pay reasonable attorneys' fees for the protection of its security interest during a bankruptcy proceeding. The fees sought in the Notice of Postpetition Fees, Expenses, and Charges relate directly back to this Section 9, and such fees "shall become additional debt of Borrower secured by this Security Instrument." *See* Claim 3, at Page 23 (Mortgage, Section 9).

Further, the rights listed in Section 9 are separate from the acceleration provision of the Mortgage, found at Section 22, as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (ad) the default; (b) the action required to sure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secure by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to asset in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22,**

**included, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

*See* Claim 3, at Page 29 (Mortgage, Section 22). Section 22 is distinct from Section 9 in that Section 22 includes the provision that:

**Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, included, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

*See* Claim 3, at Page 29 (Mortgage, Section 22). Section 9 includes no qualifying language pertaining to an allowance for attorneys' fees "to the extent permitted by Applicable Law" in regard to attorneys' fees incurred during a bankruptcy matter. Therefore, according to the contract, the analysis in regard to "Applicable Law," applies to post-acceleration attorneys' fees under Section 22, but not to the allowed charges listed under Section 9. Accordingly, Pennsylvania's Act 6 is not applicable in this matter, which is governed by the terms of the contract between Debtors and Respondent.

Looking to Section 9 as a whole, the distinction between Section 9 and Section 22 are further highlighted. Section 9 confers rights upon the Lender "to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off," and that any such expenditures "shall become additional debt of Borrower secured by this Security Instrument." *See* Claim 3, at Page 23 (Mortgage, Section 9). Taken in context of the entirety of Section 9, the Objection at hand is akin to the Debtors lodging an objection to (hypothetical) charges incurred by Respondent for the elimination of code violations or dangerous conditions.

6.  Denied as a conclusion of law. By way of further response, Pennsylvania's Act 6 is not applicable in this matter, which is governed by the terms of the contract between the Debtors

and Respondent. Respondent further refers to and incorporates the contents of paragraph 5 above as though set forth at length herein.

7. Denied. The quoted text appears in the cited unpublished 3rd Circuit opinion only as a parenthetical quote from <u>In re Olick</u>, 221 B.R. 146, 154 (E.D.Pa. 1998). By way of further response, Pennsylvania's Act 6 is not applicable in this matter, which is governed by the terms of the contract between the Debtors and Respondent. Respondent further refers to and incorporates the contents of paragraph 5 above as though set forth at length herein.

WHEREFORE, Respondent, Lakeview Loan Servicing, LLC, respectfully requests that this Honorable Court deny Debtors' Motion.

Respectfully submitted,

STERN & EISENBERG PC

By: <u>/s/ William E. Miller</u>
William Miller, Esquire
PA ID #308951
wmiller@sterneisenberg.com
Stern & Eisenberg, PC
1581 Main Street, Suite 200
Warrington, Pa  18976
Telephone: (215) 572-8111
Date: July 11, 2018                    Counsel for Respondent